**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARY BARBATO, | : | |
| on behalf of plaintiff and a class, | : | No. 2:15-cv-1271-WJN |
| | : | |
| Plaintiff, | : | (JUDGE WILLIAM J. NEALON) |
| | : | |
| v. | : | |
| | : | |
| GREYSTONE ALLIANCE, LLC, | : | |
| TURNING POINT CAPITAL, INC., and | : | |
| CROWN ASSET MANAGEMENT, LLC, | : | |
| | : | |
| Defendants. | : | Filed Electronically |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
<u>OF MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

PROCEDURAL HISTORY .......................................................................5

STATEMENT OF FACTS .......................................................................7

STATEMENT OF QUESTIONS INVOLVED........................................9

ARGUMENT .........................................................................................10

   I.   Standard of Review .......................................................................10

   II.   The FDCPA's Purpose and Enforcement Mechanisms .............10

   III.   The FDCPA Applies to the Collection Activity at Issue. ...........12

      A.   Defendant was Attempting to Collect a "Debt" as Defined by the FDCPA.........................................................................................12

      B.   Plaintiff is a "Consumer" as Defined by the FDCPA. ............13

      C.   At all Relevant Times, Both Defendant and Turning Point Were Debt Collectors. .............................................................................13

   IV.   Turning Point's Voice Messages Violated § 1692e(11) of the FDCPA Because They Failed to Identify Turning Point as a Debt Collector....................15

   V.   Turning Point's Letter Violated § 1692g of the FDCPA Because the........18 Invitation to Call Turning Point Overshadowed the Validation Notice. ..............18

   VI.   Defendant is Liable for Turning Point's Violations of the FDCPA Because Debt Collectors Are Liable For the Misconduct of Other Debt Collectors Acting on Their Behalf. ...............................................................................23

CONCLUSION ......................................................................................24

## **Table of Authorities**

**Cases**

*Doe v. County of Centre, PA,* 242 F.3d 437 (3d Cir. 2001) .......................................10

*Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364 (3d Cir. 2011) ...............12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...........................................10

*Brown v. Card Serv. Ctr*, 464 F.3d 450  (3d Cir. 2006) ..........................................12

*Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142 (3d Cir. 2013) ................................................................................................... 20, 21, 22, 23

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................10

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) ..................................................12

*Edwards v. Niagara Credit Solutions, Inc.,* 586 F. Supp. 2d 1346 (N.D. Ga. 2008) ..........................................................................................................................16

*Foti v. NCO Fin. Sys., Inc.,* 424 F. Supp. 2d 643 (S.D. N.Y.2006).........................16

*Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994) .......................23

*FTC v. Check Investors, Inc.*, 502 F.3d 159 (3d Cir. 2007) ....................................11

*Gryzbowski v. I.C. Sys., Inc.*, 691 F. Supp. 2d 618 (M.D. Pa. 2010)................ 16,18

*Hosseinzadeh v. M.R.S. Assocs., Inc.,* 387 F. Supp. 2d 1104 (C.D. Cal.2005) .......16

*Janetos v. Fulton, Friedman & Gullace, LLP,* _____ F.3d _____, 2016 WL 1382174, *7-8 (7th Cir. 2016) ...........................................................................................23

*Jarzyna v. Home Properties, L.P.*, 114 F.3d 243 (E.D. Pa. 2015) .................. 16, 17

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) .11

*Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993 (3d Cir. 2011).........11

*Mark v. J.C. Christensen & Assocs., Inc.,* No. 09–100, 2009 WL 2407700 (D. Minn. 2009)........................................................................................................16

*Masciarelli v. Boudreau & Assocs.*, 529 F.Supp.2d 183 (D. Mass. 2007)..............16

*Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000)......... 14, 15, 23

*Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004)........................................11

**Statutes**

§1692e(11) ............................................................................................... passim

15 U.S.C. § 1692a(3) ............................................................................. 13

15 U.S.C. § 1692a(5) ............................................................................. 13

15 U.S.C. § 1692k(a) .................................................................................12

15 U.S.C. § 1692k(a)(2)(B) .......................................................................12

15 U.S.C. §§ 1692(a)-(b) ...........................................................................11

15 U.S.C. §1692a(6) ..................................................................................14

15 U.S.C. §1692g(a)(3)-(5) ................................................................................ 6, 19

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") ...............5

Fed. R. Civ. Proc. 56(c) .......................................................................................10

## PLAINTIFF'S MEMORANDUM IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

Plaintiff, Mary Barbato n/k/a Mary Meade, submits this memorandum in support of her motion for summary judgment on liability against Crown Asset Management, LLC.

## PROCEDURAL HISTORY

Plaintiff initiated this action on October 7, 2013 in the Court of Common Pleas of Wayne County, Pennsylvania. Plaintiff asserted an individual claim against a debt collector, Greystone Alliance, LLC ("Greystone"), for leaving voice messages for Plaintiff which violated §1692e(11) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") because the messages failed to identify the caller as a debt collector. (Dkt. 2.)

Greystone removed the case on November 8, 2013. (Dkt. 1.) On November 13, 2013, Greystone filed an answer to the complaint (Dkt. 5) and also filed a motion to transfer the case to the United States District Court for the Western District of New York. (Dkt. 3-4.) On January 15, 2014, the Court denied Greystone's motion to transfer. (Dkt. 9-10.)

On January 28, 2014, Plaintiff moved for leave to file an amended complaint. (Dkt. 11-12), which motion the Court granted on June 13, 2014. (Dkt. 20.) Plaintiff filed the Amended Complaint on June 13, 2014. (Dkt. 21.) In the

Amended Complaint, Plaintiff named two additional defendants, Turning Point

Capital, Inc. ("Turning Point"), and Crown Asset Management, LLC ("CAM").

She alleged that Turning Point had left the voice messages for Plaintiff, and

asserted a class claim against all Defendants in connection with a letter Turning

Point sent to Plaintiff which Plaintiff alleged overshadowed the disclosures that

Plaintiff was entitled to receive pursuant to 15 U.S.C. §1692g(a)(3)-(5). (Dkt. 21.)

On June 27, 2014 and July 21, 2014, Greystone and CAM, respectively,

filed answers to the Amended Complaint. (Dkt. 23, 26.) Although Turning Point

was served on July 15, 2014 (Dkt. 28), Turning Point never appeared, and Plaintiff

non-suited Turning Point (as well as Greystone) on January 12, 2016. (Dkt. 62.)

On November 13, 2014, counsel for Greystone and CAM, Michael J. Palumbo,

moved to withdraw (Dkt. 30), which motion the Court granted on December 18,

2014. (Dkt. 35.) On March 25, 2015, Plaintiff moved to default all defendants.

(Dkt. 36.) On March 30, 2015, Mr. Palumbo re-appeared for CAM. (Dkt. 37.)

On May 7, 2015, the Court entered a scheduling order. (Dkt. 43.), which

order was subsequently amended on September 25, 2015. (Dkt. 54.)  On August

17, 2015, the Court set a schedule for the briefing of a motion for class

certification. (Dkt. 45.) On January 14, 2016, Plaintiff moved to further amend the

scheduling order (Dkt. 63), a motion which the Court initially denied as moot on

January 20, 2016 (Dkt. 67) in light of Plaintiff's having filed a motion for class

certification on January 15, 2016. (Dkt. 64.) Plaintiff moved for reconsideration of the Court's January 20, 2016 order (Dkt. 68), which motion was granted in part (Dkt. 74) (Dkt. 74), the Court extending the deadline to file motions for summary judgment to April 15, 2016. Plaintiff's request for additional time to complete class discovery is currently being briefed.

## STATEMENT OF FACTS

Plaintiff is a natural person who at all relevant times resided in the Middle District of Pennsylvania. (Plaintiff's Local Rule 56.1 Statement of Material Facts In Support of Motion for Summary Judgment on Liability ("Plaintiff's Facts") ¶1.) Defendant is engaged in the business of purchasing accounts on which consumers have stopped paying and collecting the debts using third party debt collection agencies. (Plaintiff's Facts ¶3.)

Prior to January 30, 2013, Plaintiff obtained a "Care Credit" card which she used for personal, family or household purposes, namely to pay for dental care for herself and veterinary care for her dog. (Plaintiff's Facts ¶6.) On or about January 30, 2013, Defendant purchased Plaintiff's Care Credit account from General Electric Capital Corporation. (Plaintiff's Facts ¶7.) On or about February 4, 2013, Defendant referred Plaintiff's debt to a debt collection agency, Turning Point Capital, Inc. ("Turning Point"), for collection. (Plaintiff's Facts ¶¶8-9.) On May 1,

2013, Defendant recalled Plaintiff's account from Turning Point, a recall which

was complete by May 6, 2013. (Plaintiff's Facts ¶¶10-11.)

On or about February 6, 2013, Turning Point sent a letter to Plaintiff.

(Plaintiff's Facts ¶12.) The February 6, 2013 letter from Turning Point to Plaintiff

stated in relevant part:

> Our client, CROWN ASSET MANAGEMENT, LLC has purchased your account and all rights to the debt from GE SALES FINANCE. There is an outstanding balance due of XXXX. Our client's records indicate that payment has not been received or processed as of the date of this correspondence, and has therefore been listed for collection.
>
> If you are unsure of its validity, you may contact us directly at 1-800-872-9312 to obtain additional information regarding this obligation. Otherwise, you may clear your account from our collection process immediately by sending the bottom portion of this letter with your payment in full using the enclosed envelope. Your account will be properly credited and you will receive no further communication from us on this account.

(Plaintiff's Facts ¶13.)

Between February 4, 2013 and May 6, 2013, Turning Point called Plaintiff's

cellular telephone and left two messages in her voice mailbox. (Plaintiff's Facts

¶14.) The first voice message left for Plaintiff stated:

> Hi, this message is intended for Mary. Mary, my name is Brian calling from Turning Point. I'm calling in regards to a matter of yours that's been placed here in the office. It's very important that you return my call. You could

reach me at 800-872-9312. Your file number is 881811. Again, this is Brian calling from Turning Point, and it's important that I hear back from you."

(Plaintiff's Facts ¶15.)

The second voice message left for Plaintiff stated:

Hi, this message is intended for Mary Barbato. Mary, my name is Brian. I'm calling from Turning Point. And I'm calling in regards to a matter of yours that's been placed here in the office. It's very important that you return my call. You could reach me at 800-872-9312. Your file number is 881811. Again, this is Brian calling from Turning Point. Its important that I hear back from you. Thank you.

(Plaintiff's Facts ¶16.)

Defendant's referral of Plaintiff's account to Turning Point, and Defendant's subsequent recall of the account, were pursuant to a "Service Agreement" between Defendant and Turning Point signed on or about December 18, 2012. (Plaintiff's Facts ¶17.)

## STATEMENT OF QUESTIONS INVOLVED

1.    Do the voice messages left for Plaintiff by a representative of Turning Point, which messages do not identity Turning Point as a debt collector, violate § 1692e(11) of the FDCPA?

2.    15 U.S.C. § 1692g(a)(3)-(5) generally require a debt collector to provide a disclosure in its first letter to a consumer advising the consumer of a right to have the debt validated if the consumer disputes the debt **in writing.** Is the

9

effectiveness of those disclosures diminished in Turning Point's February 6, 2013 letter to Plaintiff, where Turning Point invites the consumer to challenge the validity of the debt orally?

3.    Is Defendant vicariously liable for Turning Point's violations of the FDCPA?

## ARGUMENT

### I.    Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The moving party bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Doe v. County of Centre, PA,* 242 F.3d 437, 446 (3d Cir. 2001). The substantive law of the issues raised by the claims asserted in the complaint determines what is "material" for purposes of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). By these standards, Plaintiff's motion for summary judgment should be granted.

### II.    The FDCPA's Purpose and Enforcement Mechanisms

The FDCPA regulates the behavior of debt collectors attempting to collect a debt on behalf of another. Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. 15 U.S.C. §§ 1692(a)-(b). Consequently, Congress adopted the FDCPA with the "express purpose to eliminate abusive debt collection practices by debt collectors, and to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) (internal quotes omitted); *Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993, 996 (3d Cir. 2011); 15 U.S.C. § 1692(e).

The FDCPA is not concerned with whether the consumer owes the debt, rather, "[a] basic tenet of the Act is that all consumers, even those who have mismanaged their financial affairs resulting in default on their debt, deserve the right to be treated in a reasonable and civil manner." *FTC v. Check Investors, Inc.*, 502 F.3d 159, 165 (3d Cir. 2007) (internal citations omitted). "Congress also intended the FDCPA to be self-enforcing by private attorney generals." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004).

The FDCPA is construed broadly so as to effectuate its remedial purposes and a debt collector's conduct is judged from the standpoint of the "least sophisticated consumer." *Brown v. Card Serv. Ctr*, 464 F.3d 450, 453 n1 (3d Cir. 2006). In this way, "the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). Except where the Act expressly makes knowledge or intent an element of the violation, the "FDCPA is a strict liability statute." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (citing in footnote 7 supporting authorities from the Second, Seventh, Ninth and Eleventh Circuits).

A debt collector who violates any provision of the FDCPA is liable for "additional damages" (also called "statutory damages") of up to $1,000.00, and attorney's fees and costs. 15 U.S.C. § 1692k(a). Additionally, in a class action the class members may recover "additional damages" not exceeding the lesser of $500,000 or 1% of the net worth of the debt collector. 15 U.S.C. § 1692k(a)(2)(B).

**III.    The FDCPA Applies to the Collection Activity at Issue.**

For the FDCPA to apply to the collection conduct here, Plaintiff must prove that Defendant sought to collect a "debt" from her, that she is a "consumer," and that Defendant is a "debt collector."

**A.    Defendant was Attempting to Collect a "Debt" as Defined by the FDCPA.**

Defendant was attempting to collect a "debt," as that term is defined by the FDCPA. The FDCPA defines a "debt," as

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). Here, Defendant was attempting to collect on a "Care Credit" card which Plaintiff obtained and used to pay for dental care for herself and veterinary care for her dog. (Plaintiff's Facts ¶6.) These are plainly "personal, family, or household purposes" and are not business purposes. Thus, this action involves a "debt" within the meaning of the FDCPA.

### B.   Plaintiff is a "Consumer" as Defined by the FDCPA.

Plaintiff is a "consumer" as that term is defined by the FDCPA. The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Plaintiff is a natural person and, as established above, the obligation Defendant was attempting to collect was a "debt."

### C.   At all Relevant Times, Both Defendant and Turning Point Were Debt Collectors.

Both Defendant and Turning Point are debt collectors as defined by the FDCPA. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal

purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(6).

Turning Point was a "debt collector" because its principal business was collecting debts. (Plaintiff's Facts ¶9.) At the top of the letter at issue, Turning Point identifies itself as a "National Debt Collection Agency." (Plaintiff's Facts ¶ 19.) Moreover, the Service Agreement between Defendant and Turning Point states that Turning Point "seeks to provide certain collection services" to Defendant, that Defendant "seeks to procure certain collection services from" Turning Point, and that Turning Point "will undertake collection on each Account placed" by Defendant. (Plaintiff's Facts ¶ 18.) Moreover, as evidenced by the letter and voice messages at issue here, Turning Point used instrumentalities of interstate commerce such as telephone or the mails in furtherance of the principal purpose of its business, namely the collection of debts.

Likewise, at all relevant times, Defendant was also a "debt collector" as defined by the FDCPA. The assignee of defaulted obligations may be considered a debt collector. *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000). If the principal purpose of the assignee's business is the collection of defaulted obligations, then the assignee *is* deemed a debt collector, even if the assignee retains third party debt collectors to collect the debts. *Id.* at 404. Here,

Defendant is primarily engaged in the business of purchasing consumer accounts in default and collecting the debts using third party debt collection agencies. (Plaintiff's Facts ¶3.) Under *Pollice*, Defendant is a debt collector subject to the FDCPA. *Id.* at 403-404.

## IV.   Turning Point's Voice Messages Violated § 1692e(11) of the FDCPA Because They Failed to Identify Turning Point as a Debt Collector.

The messages left by Turning Point in Plaintiff's voice mailbox violated §1692e(11) of the FDCPA because the messages did not state they were being left by a debt collector. Section 1692e(11) provides as follows:

> **15 U.S.C. 1692e. False or misleading representations.**
>
> A debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . . .
> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, *and the failure to disclose in subsequent communications that the communication is from a debt collector*, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. §1692e(11) (emphasis added). Courts in this district and elsewhere have held that a debt collector violates § 1692e(11) when the collector leaves a voice message and fails to disclose that the call is from a debt collector. *Gryzbowski v. I.C. Sys., Inc.*, 691 F. Supp. 2d 618 (M.D. Pa. 2010)(Vanaskie, J.); *Jarzyna v. Home Properties, L.P.*, 114 F.3d 243, 265-266 (E.D. Pa. 2015); *Edwards v. Niagara Credit Solutions, Inc.,* 586 F. Supp. 2d 1346, 1352–53 (N.D. Ga. 2008); *Hosseinzadeh v. M.R.S. Assocs., Inc.,* 387 F. Supp. 2d 1104, 1116 (C.D. Cal.2005); *Masciarelli v. Boudreau & Assocs.,* 529 F.Supp.2d 183, 186 (D. Mass. 2007);  *Foti v. NCO Fin. Sys., Inc.,* 424 F. Supp. 2d 643, 661 (S.D. N.Y.2006); *Mark v. J.C. Christensen & Assocs., Inc.,* No. 09–100, 2009 WL 2407700, at *4 (D. Minn. 2009).

In *Gryzbowski v. I.C. Sys., Inc.*, 691 F. Supp. 2d 618 (M.D. Pa. 2010), the defendant debt collector left the following message "Hello this message is for Donna Gryzbowski. This is IC System calling in regards to a personal business matter. Please give us a call back at 1 (866) 903–1001."  *Gryzbowski*, 691 F. Supp. 2d at 620. The message provided the company's name, but did not disclose that it was a debt collector. Further, there was nothing in either the name of the debt collector or the content of the message that suggested that the caller was a debt collector. District Judge Vanaskie held that the message, and approximately ten others like it, violated § 1692e(11) because the messages did not identify the caller

as a debt collector. *Id*. at 622-624. *See also Jarzyna v. Home Properties, L.P.*, 114

F.3d 243, 265-266 (E.D. Pa. 2015) (holding that messages that did not identify the

caller as a debt collector violated §1692e(11) even if the consumer had not listened

to the messages).

Here, as in *Grybowski* and *Jarzyna*, Turning Point left messages which

failed to identify it as a debt collector. In the first voice message left for Plaintiff,

the Turning Point representative stated:

> Hi, this message is intended for Mary. Mary, my name is
> Brian calling from Turning Point. I'm calling in regards
> to a matter of yours that's been placed here in the office.
> It's very important that you return my call. You could
> reach me at 800-872-9312. Your file number is 881811.
> Again, this is Brian calling from Turning Point, and its
> important that I hear back from you.

(Plaintiff's Facts ¶14).

In the second voice message left for Plaintiff, the Turning Point

representative stated:

> Hi, this message is intended for Mary Barbato. Mary, my
> name is Brian. I'm calling from Turning Point. And I'm
> calling in regards to a matter of yours that's been placed
> here in the office. It's very important that you return my
> call. You could reach me at 800-872-9312. Your file
> number is 881811. Again, this is Brian calling from
> Turning Point. Its important that I hear back from you.
> Thank you.

(Plaintiff's Facts ¶15.)

Like the messages in *Gryzbowski*, the messages here provided the

company's name, but did not disclose that Turning Point was a debt collector.

Further, there is nothing in either the name "Turning Point" or the content of the

message that suggested that the caller was a debt collector. Like the messages in

*Gryzbowski*, Turning Point's messages violated § 1692e(11) because they failed to

state that the caller was a debt collector.

**V.   Turning Point's Letter Violated § 1692g of the FDCPA Because the Invitation to Call Turning Point Overshadowed the Validation Notice.**

Turning Point's letter to Plaintiff violates §1692g of the FDCPA because the

"Validation Notice" is overshadowed by the letter's statement: "If you are unsure

of its validity, you may contact us directly at 1-800-872-9312 to obtain additional

information regarding this obligation." The Validation Notice consists of the

disclosures required by § 1692g(a)(3)-(5) of the FDCPA which provides in

relevant part:

> **15 U.S.C. 1692g(a) Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> . . . .
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of

18

the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. §1692g(a)(3)-(5). In other words, the Validation Notice advises the consumer that if, within thirty days of receipt of the Validation Notice, she (a) fails to dispute the debt, the debt collector can assume it is valid; (b) does dispute the debt, the debt collector shall provide in writing verification of the debt or a copy of the judgment; and (c) requests the name and address of the current creditor, the debt collector shall provide that information if the original creditor is different from the current creditor. *Id.* A consumer's dispute of a debt is only legally effective if it is **in writing**. *Graziano v. Harrison*, 950 F.2d 107, 112 (3d 1991).

A debt collector, in the thirty day period after the Validation Notice is sent, may not do anything which would have the effect of "overshadow(ing) or be(ing) inconsistent with" the Validation Notice. 15 U.S.C. § 1692g(b). Language in a letter containing a Validation Notice can itself overshadow the validation notice.

19

*Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 151-152 (3d Cir. 2013) (letter's invitation to *call* the debt collector overshadowed the Validation Notice which required disputes to be in writing); *Graziano*, 950 F.2d at 111 (letter's demand that payment be made in ten days overshadowed Validation Notice which allowed consumer thirty days to dispute the debt). Language in Turning Point's letter to Plaintiff overshadowed the Validation Notice in the same manner as language found to be unlawful in *Caprio*.

In *Caprio*, the defendant debt collector sent a letter consisting of four paragraphs on the front of the letter:

> The health care provider(s) listed below, recently hired Healthcare Revenue Recovery Group, LLC (HRRG) to collect the balance on this account. Our client's records show you as the person responsible for payment of the charges for PHYSICIAN SERVICES.
>
> If we can answer any questions, or if you feel you do not owe this amount, **please call** us toll free at **800–984–9115** or write us at the above address. This is an attempt to collect a debt. Any information obtained will be used for that purpose. (NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.)
>
> You may send payment in full. Just fill in your credit card information on the reverse, or enclose your check/money order payable to the creditor along with the payment voucher below. The reply envelope provided needs no postage. Unless specified, your payment will be applied to the oldest balance first.
>
> We hope to have your full cooperation in this collection matter.

*Caprio*, 709 F.3d at 145, 151-152 (emphasis in the original). The back of the letter contained the Validation Notice. *Id.* at 146.

*Caprio* held that both the substance and the form of the invitation to telephone the defendant to dispute the debt overshadowed the Validation Notice which required disputes to be in writing. *Caprio* held that the substance of the letter was confusing because the invitation to dispute the debt by telephone could lead the least sophisticated consumer to erroneously believe that an oral dispute was legally effective. *Id.* at 151. The form of the letter corroborated this conclusion. *Caprio* noted that the fact that "please call" was in bold on the front of the letter and that the validation notice was on the back side of the letter was likely to induce the least sophisticated debtor to submit any dispute by phone rather than in writing. *Id*. at 152. Ultimately, it was the *meaning* or substance of the letter which led the *Caprio* court to conclude that the letter was deceptive and would be confusing to the least sophisticated debtor:

> We therefore conclude that the Collection Letter was deceptive because "'it can be reasonably read to have two or more different meanings, one of which is inaccurate,'" i.e., that Caprio could dispute the debt by making a telephone call. In short, the Validation Notice was overshadowed and contradicted because the "least sophisticated debtor" would be "'uncertain as to her rights.'"

*Id*. (citations omitted).

Like the letter in *Caprio*, language in the Turning Point letter overshadows the Validation notice. The body of the Turning Point letter consists of two paragraphs which state as follows:

> Our client, CROWN ASSET MANAGEMENT, LLC has purchased your account and all rights to the debt from GE SALES FINANCE. There is an outstanding balance due of _____. Our client's records indicate that payment has not been received or processed as of the date of this correspondence, and has therefore been listed for collection.
>
> *If you are unsure of its validity, you may contact us directly at 1-800-872-9312 to obtain additional information regarding this obligation.* Otherwise, you may clear your account from our collection process immediately by sending the bottom portion of this letter with your payment in full using the enclosed envelope. Your account will be properly credited and you will receive no further communication from us on this account.

(Plaintiff's Facts ¶13 (emphasis added).)

As in *Caprio*, the Turning Point letter invited Plaintiff to telephone Turning Point if she disputed the debt: "If you are unsure of its validity, you may contact us directly at 1-800-872-9312 to obtain additional information regarding this obligation." The invitation to make an oral dispute overshadows the Validation Notice which required disputes to be in writing. As in *Caprio*, Turning Point's invitation to make an oral dispute could lead the least sophisticated consumer to

erroneously believe that an oral dispute was legally effective. *Caprio*, 709 F.3d at 151.

Moreover, in one respect, the Turning Point letter is even *more* deceptive than the letter in *Caprio*. In *Caprio*, the letter invited the consumer to call *or* to write in the event of a dispute: "If we can answer any questions, or if you feel you do not owe this amount, **please call** us toll free at **800–984–9115** or *write us* at the above address." *Id*. at 145 (italic emphasis added). The Turning Point letter does not invite a written dispute at all, just a phone call. As in *Caprio*, the Turning Point letter is "deceptive" because it leaves the unsophisticated consumer "uncertain" as to his or rights under § 1692g(a)(3).

## VI.    Defendant is Liable for Turning Point's Violations of the FDCPA Because Debt Collectors Are Liable For the Misconduct of Other Debt Collectors Acting on Their Behalf.

Defendant is liable for Turning Point's violations of the FDCPA. Where one debt collector retains a second debt collector to collect a consumer account, the former is responsible for the FDCPA violations of the latter. *Pollice*, 225 F.3d at 405 (finding vicarious liability and explaining that "an entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."); *see also Janetos v. Fulton, Friedman & Gullace, LLP*, _____ F.3d _____, 2016 WL 1382174, *7-8 (7th Cir. 2016)(following *Pollice*); *Fox v. Citicorp Credit Services, Inc*., 15

23

F.3d 1507, 1516 (9th Cir. 1994). As discussed *supra* in part III.C, both Defendant and Turning Point are debt collectors, and Defendant retained Turning Point to attempt to collect Plaintiff's account. Therefore, Defendant is liable for Turning Point's violations of the FDCPA.

## **<u>CONCLUSION</u>**

For the foregoing reasons, and those set forth in Plaintiff's motion, Plaintiff respectfully urges the Court to grant her motion for summary judgment on liability.

Respectfully submitted,


<u>s/ Francis R. Greene</u>
Francis R. Greene

Daniel A. Edelman
Francis R. Greene
EDELMAN COMBS LATTURNER & GOODWIN LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (fax)
fgreene@edcombs.com
info@edcombs.com

24

Carlo Sabatini, (PA 83831)
Attorney for Plaintiff
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Facsimile (570) 504-2769
Email ecf@bankruptcypa.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

Service is being effectuated upon Defendant through the CM/ECF system.

s/Francis R. Greene
Francis R. Greene

## TYPE VOLUME CERTIFICATION

I, Francis R. Greene certify that the substance of this brief, *i.e.*, not including the caption, the table of contents, and the table of authorities, contains 4,633 words and, therefore, complies with the word-count limit set forth in Local Rule 7.8(b)(2).

s/Francis R. Greene
Francis R. Greene