# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY BARBATO,** | : | |
| **Plaintiff,** | : | |
| | | **Civil Action No. 3:13-2748** |
| **v.** | : | |
| | : | |
| **GREYSTONE ALLIANCE, LLC,** | : | **(JUDGE MANNION)** |
| ***et al.,*** | | |
| | : | |
| **Defendants** | | |

## MEMORANDUM

Before the court is remaining defendant Crown Asset Management, LLC's ("Crown") motion for reconsideration, (Doc. 107), of Judge Nealon's decision, (Doc. 100), finding that Crown is a "debt collector" as defined in §1692a(6) of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA"), and denying its motion for summary judgment. Crown's motion is based on the recent decision by the Supreme Court in Henson v. Santander USA, Inc., — U.S.—, 137 S.Ct. 1718 (June 12, 2017), issued after Judge Nealon's decision. After a thorough review of the record, the court will **DENY** defendant Crown's motion for reconsideration.[1]

---

[1]On July 20, 2017, this case was reassigned to the undersigned judge from Judge Nealon who issued the March 30, 2017 Memorandum. (Doc. 100).

# I. BACKGROUND

This court will not repeat the full procedural and factual background of this case since they are detailed extensively in the March 30, 2017 Memorandum. (Doc. 100, pp. 1-14). *See also* 2017 WL 1193731 (M.D.Pa. March 30, 3017). Rather, the court incorporates by reference the background as stated in the March 30, 2017 Memorandum.

Suffice it to say that on June 23, 2017, Crown filed a motion for reconsideration of the court's March 30, 2017 Order denying the cross-summary judgment motions of plaintiff and Crown. (Doc. 107). Crown simultaneously filed its brief in support. (Doc. 108). After being granted an extension of time, plaintiff filed a motion under seal on July 12, 2017, (Doc. 110), seeking the court's permission to file, either under seal or not, her attached brief in opposition to Crown's motion for reconsideration, (Doc. 110-2), and exhibit, namely, two excerpts (three sentences in total) from Crown's Consolidated Financial Statement for years 2012-2014 which Crown provided to plaintiff in discovery under a protective order.

On August 4, 2017, Crown filed its reply brief in support of its reconsideration motion. (Doc. 113). Also, on August 4, 2017, Crown filed a brief in opposition to plaintiff's Doc. 110 motion and requests the court to strike the protected information from plaintiff's brief under Fed.R.Civ.P. 12(f). (Doc. 114). On August 18, 2017, plaintiff filed a motion to file her reply brief

in support of her (Doc. 110) motion, either under seal or not, (Doc. 116), as well as a brief in support with an attached exhibit, (Doc. 117).

As discussed below, the court will not consider Crown's Financial Statement which plaintiff has submitted with her opposition brief and will strike the portions of her brief regarding this document. As such, the court will grant plaintiff's motion to file her opposition brief, (Doc. 110-2), as well as her reply brief, (Doc. 117-1), under seal and it will grant Crown's motion to strike, (Doc. 114), the attached exhibit, (Doc. 110-3), to plaintiff's opposition brief and any reference to the exhibit in both of her briefs, (Doc. 110-2) and (Doc. 117-1).

## II. STANDARD OF REVIEW

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir.

1999)); *Chesapeake Appalachia, L.L.C. v. Scott Petroleum*, LLC, 73 F. Supp. 3d 488, 491 (M.D. Pa. 2014) (Generally, reconsideration motions should be granted sparingly.); *Cont'l Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995). "The standard for granting a motion for reconsideration is a stringent one . . . . [A] mere disagreement with the court does not translate into a clear error of law." *Chesapeake Appalachia, L.L.C.*, 73 F. Supp. 3d at 491 (quoting *Mpala v. Smith*, Civ. No. 3:CV-06-841, 2007 WL 136750, at *2 (M.D. Pa. Jan. 16, 2007), aff'd, 241 F. App'x 3 (3d Cir. 2007)) (alteration in original). Additionally, "'new evidence,' for reconsideration purposes, does not refer to evidence that a party obtains or submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." Howard Hess Dental Labs., 602 F.3d at 251 (citation omitted). "Evidence that is not newly discovered, as so defined, cannot provide the basis for a successful motion for reconsideration." Blystone v. Horn, 664 F.3d 397, 416 (3d Cir. 2011) (citing Harsco, 779 F.2d 906, 909 (3d Cir.1985)).

## III. DISCUSSION

Initially, the court will address plaintiff's (Doc. 110) motion and request

to submit a portion of Crown's Financial Statement.[2] Plaintiff states that the exhibit to her opposition brief contains information which Crown designated as "Confidential" and "Attorney Eyes Only" and, thus is protected under the protective order entered by the court, (Doc. 47). However, plaintiff requests that the court allow her to file her brief not under seal and that the court consider this "very limited unredacted information" since it is directly relevant to the issue presented in Crown's motion for reconsideration, i.e., whether Crown is a "debt collector" subject to the FDCPA. Plaintiff states that under the factors of *Pansy v. Borough of Stroudsburg,* 23 F.3d 772 (3d Cir. 1994), her need for the information outweighs any injury to Crown that may result if the court allows its disclosure because the information shows that the principal purpose of Crown's business is the collection of debts. Alternatively, plaintiff requests the court to allow her to file her opposition brief with the attached information as well as her reply brief under seal if it determines that Crown can establish good cause by showing disclosure would cause it harm.

Crown opposes plaintiff's motion to file the exhibit either under seal or not and requests the court to strike this information under Fed.R.Civ.P. 12(f). (Doc. 114). In Tennis v. Ford Motor Co., 730 F.Supp.2d 437, 443 (W.D.Pa.

---

[2]Because the relevant portions of Crown's Financial Statement are protected from disclosure and contained in plaintiff's (Doc. 110-3) filing at page 3, which is under seal, the court will not state the provisions herein.

2010), the court explained as follows regarding a Rule 12(f) motion:

> Under Fed.R.Civ.P. 12(f) "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) "permits the court, on its own motion, or on the timely motion of a party, to order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Adams v. Cnty. of Erie, Pa., 2009 WL 4016636 at *1 (W.D.Pa. Nov. 19, 2009) (quoting Fed.R.Civ.P. 12(f)). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Natale v. Winthrop Resources Corp., 2008 WL 2758238 at *14 (E.D.Pa. July 9, 2008) (quoting McInerney v. Moyer Lumber & Hardware, Inc., 244 F.Supp.2d 393, 402 (E.D.Pa. 2002)).

Crown contends that plaintiff's motion should be denied for the following reasons:

> First, the [Financial Statement] Document is immaterial since it was prepared by Crown's auditor and contains non-binding, non-sworn, non-legal statements. Second, the Document should not be considered because the Plaintiff failed to follow the specific procedure set forth in the Confidentiality and Discovery Protective Order. Third, the Document is irrelevant for the principal business purpose that the Plaintiff seeks to use it because, post- *Henson*, Crown is a creditor, not a debt collector, under the [FDCPA].

(Doc. 114-1).

Crown states that on September 8, 2015, its counsel emailed plaintiff's counsel several pages of bates-stamped information, including the subject Financial Statement, i.e., "CAM 303 through CAM 320", which was designated as "ATTORNEYS' EYES ONLY–SUBJECT TO DISCOVERY CONFIDENTIALITY ORDER."

The court finds that the information plaintiff now seeks to introduce was not part of the record before Judge Nealon when he rendered his March 30, 2017 decision. Nor did the court rely on this information when it issued its prior decision. Rather, the court based its decision on the record before it, including the statement of material facts of Crown, portions of which it found undisputed. As in Howard Hess Dental Labs., 602 F.3d at 252, "[n]othing in the record suggests that the evidence the Plaintiff[] [seeks] to present post-summary judgment was unavailable to [it] when [it] filed [its] summary judgment motion." In fact, Crown sent plaintiff the information in September 2015. The Third Circuit has held that "[t]he scope of a motion for reconsideration, ..., is extremely limited" and that "[s]uch motions are not to be used as an opportunity to relitigate the case." Blystone, 664 F.3d at 416.

Further, Crown's motion for reconsideration is based only on *Henson*, a change in controlling law, and the legal issue of whether *Henson* effects this court's decision finding that Crown was a "debt collector" based on the *Check Investors* case. As mentioned, Crown argues that "post-*Henson*, Crown is a creditor, not a debt collector, under the [FDCPA]." The issues considered by the court in its March 30, 2017 decision, (Doc. 100, p. 15), were whether Crown was a "debt collector" under the FDCPA at the time of the violations alleged by plaintiff, Turning Point's status as a "debt collector" under the FDCPA, and whether Crown is liable for the alleged FDCPA violations

7

committed by Turning Point. The court found that Crown acquired plaintiff's account while in default and that Crown was a "debt collector" under the principal purpose definition of the FDCPA. As such, the court found that Crown could be vicariously liable for the alleged violations committed by Turning Point based on the *Pollice* case.

Thus, the court in its discretion will not consider Crown's Consolidated Financial Statement for years 2012-2014, which plaintiff is attempting to submit after the summary judgment motions were ruled upon, since this information was available to her prior to the filing of the summary judgment motions. *See* Howard Hess Dental Labs., 602 F.3d at 252 (citing Harsco, 779 F.2d at 909 ("district court correctly did not consider affidavit filed after summary judgment was granted because it 'was available prior to the summary judgment'")). As such, the court will strike Crown's Consolidated Financial Statement under Rule 12(f), (Doc. 110-3), as well as plaintiff's references to it in her opposition brief and her reply brief, and will not consider this information in deciding Crown's motion for reconsideration.

The court will now address the heart of the matter, namely, whether the court's prior decision that Crown qualifies as a "debt collector" under FDCPA, still holds water in light of *Henson*.

In its motion for reconsideration, Crown requests this court to enter an Order "(a) reconsidering this court's March 30, 2017 Order that found Crown

8

to be a debt collector, (b) concluding Crown to be a creditor, [and] (c) entering summary judgment in favor of Crown and against the Plaintiff upon Counts I and II of the First Amended Complaint." Crown's instant motion for reconsideration is based on a change in controlling law, namely, *Henson*. However, the parties dispute as to whether *Henson* is controlling with respect to this case. "In *Henson*, the Court held that individuals and entities who regularly purchase debts originated by someone else and then seek to collect on those debts do not qualify as debt collectors under the second prong of 15 U.S.C. §1692a(6) because they are not attempting to collect the debt of another." Deal v. Trinity Hope Associates, LLC, 2017 WL 3026401, *3 n. 2 (W.D.N.C. July 17, 2017) (citing Henson, 137 S.Ct. at 1721-25); Schweer v. HOVG, LLC, 2017 WL 2906504, *2 (M.D.Pa. July 7, 2017) (In *Henson*, "[t]he Court ruled that Congress did not intend for debt buyers to be considered debt collectors for the purposes of the [FDCPA], where the debt buyers attempted to collect debts for which the debt buyer now owned.") (citing Henson,137 S. Ct. at 1724).

Crown states that "*Henson* involves an identical issue of substantial importance before this Honorable Court, namely, whether Crown qualifies as a debt collector under the [FDCPA] where it does not regularly collect or attempt to collect on debts owed or due another even when the debts were in default when acquired." (Doc. 102, p. 2). In the March 30, 2017 Memorandum,

9

Judge Nealon found that Crown qualified as a "debt collector" under the first definition of "debt collector" contained in the FDCPA which was not at issue in *Henson*. His decision was based upon, *inter alia*, an interpretation of the Third Circuit case of Fed. Trade Commission v. Check Investors, Inc., 502 F.3d 159 (3d Cir. 2007), finding that Crown was acting as a "debt collector" and subject to the FDCPA. (Doc. 100, pp. 24-26.); Check Investors, 502 F.3d at 173 ("[o]ne attempting to collect a debt is a 'debt collector' under the FDCPA if the debt in question was in default when acquired."). Other circuits, namely, the Fourth (i.e., Henson v. Santander Consumer USA, Inc., 817 F.3d 131, 135 (4th Cir. 2016)) and Eleventh Circuits, held that under the FDCPA, a purchaser of charged-off receivables is not a debt collector simply because it acquired the defaulted debts.

In opposition to Crown's motion, plaintiff essentially argues that *Henson* has no bearing on the present case since it dealt with the distinction between a "debt collector" and a "creditor" with respect to the second definition of debt collector under §1692a(6), as opposed to the first definition, namely, a "principal purpose" debt collector, which is the issue herein. In fact, as plaintiff points out, the *Henson* Court specifically stated that the "principal purpose" definition of debt collector was not at issue in that case. Henson, 137 S.Ct. at 1721-25. As such, plaintiff basically asserts that while *Henson* may be persuasive authority, it is not a change in controlling law.

In order to discuss whether *Henson* has any effect on the present case and the court's finding that Crown does not fit the definition of a "debt collector" in light of *Henson*, the facts will be briefly repeated.

In 2007, plaintiff obtained a credit card from GE[3] for personal use. She was unable to pay off her outstanding balance. Between 2011 and 2013, plaintiff's delinquent account with GE in the amount of $2,483.83, was basically transferred as a charged-off receivable to Atlantic, then to Security Credit, then to Brightwater, and finally to Crown.

As the court stated in the March 30, 2017 memorandum, (Doc. 100, p. 8):

> Crown is a purchaser of charged-off receivables. (Doc. 80, p. 2); (Doc. 84, p. 2). However, Crown does not directly collect on its charged-off receivables. (Id.). Rather, Crown refers all of its charged-off receivables to third-parties for collection. (Id.). For example, on December 18, 2012, Crown entered into a service agreement (the "Service Agreement") with Turning Point. (Doc. 80, p. 5); (Doc. 84, p. 3). According to the Service Agreement, Crown was seeking "to procure certain collection services from" Turning Point. (Doc. 80-8, p. 2).

Based on the Service Agreement , Crown referred plaintiff's account to Turning Point on February 4, 2013. On February 6, 2013, Turning Point, identifying itself as a "National Debt Collection Agency," issued a letter to

---

[3]The court uses the same abbreviations that the court referenced in the March 30, 2017 memorandum, (Doc. 100), since the parties are well familiar with them.

plaintiff, in part, stating:

> Our client, [Crown] has purchased your account and all rights to the debt from [GE]. There is an outstanding balance due of $2,483.83. Our client's records indicate that payment has not been received or processed as of the date of this correspondence, and has therefore been listed for collection.

The letter also notified plaintiff that: **This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.** (Doc. 100, pp. 11-12) (emphasis original).

Turning Point also left two voicemail messages for plaintiff on her cellular telephone regarding her account between February 4, 2013 and May 6, 2013. (*See* Doc. 100, p. 13).

Crown did not review or approve the February 6, 2013 letter. Nor did Crown make any calls to plaintiff about her account.

Subsequently, in May 2013, plaintiff filed a Chapter 7 bankruptcy petition and Crown then recalled her account from Turning Point. Finally, on June 6, 2013, Crown closed plaintiff's account.

Plaintiff is proceeding on her amended complaint, (Doc. 21), and only Crown remains as a defendant. Plaintiff alleges that Crown violated §1692e(11) and §1692g of the FDCPA. (Id. at pp. 4-6). She also asserts class allegations with respect to her §1692g claim. (Id. at pp. 5-6). Plaintiff essentially "claims that Turning Point failed to identify itself as a debt collector

when it called her to attempt collection of a debt, contrary to 15 U.S.C. §1692e(11)" and that "Turning Point sent a letter [on February 6, 2013] which contained a statement that 'overshadowed' disclosures required by 15 U.S.C. §1692g." The claim under §1692g "is being pursued for a putative class of Pennsylvania residents."

In Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014), the Third Circuit delineated the following elements that a plaintiff must prove to prevail on an FDCPA claim: "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."

At issue in this case regarding the reconsideration motion, is whether plaintiff can prove that Crown was a "debt collector" under the FDCPA in light of *Henson*, 137 S.Ct. at 1723-24, which held that "an entity collecting a debt for its own account is not a 'debt collector' under the FDCPA even if it purchased the debt when it was in default." Bank of New York Mellon Trust Co. N.A. v. Henderson, 862 F.3d 29, 34 (D.C. Cir. 2017); *Henson*, 137 S.Ct. at 1724 ("So a company collecting purchased defaulted debt for its own account … would hardly seem to be barred from qualifying as a creditor under the statute's plain terms."). Crown argues that it merely accepted an assignment of plaintiff's account after her debt was in default and that based

13

on *Henson*, it is not a debt collector.

Specifically, Crown contends as follows:

Crown is a creditor under the FDCPA. If Crown is a creditor, it cannot be a debt collector, pursuant to Third Circuit jurisprudence. Which means that because Crown is a creditor, one does not review Crown's principal business purpose. If this Court were to ignore the mutual exclusivity issue, then Crown would be both a creditor and a debt collector, resulting in an outcome contrary to the law of this Circuit.

(Doc. 113, p. 2).

Crown states that it is not a third party collection agency which the Court in *Henson* found to be the focus of the FDCPA. Rather, Crown maintains that it is a debt owner which was seeking to collect debts for itself. Crown states it was not trying to collect on any debts "owed ... another", language part of the second definition of debt collector which was at issue in *Henson*. Crown states that "as the current owner of the [plaintiff's] Account, it would be the entity to whom the account is 'owed' and not 'another.'" As such, Crown maintains that under *Henson*, it is not a debt collector. (Id. at pp. 3-4).

Plaintiff contends that notwithstanding *Henson*, Crown is a debt collector since Judge Nealon determined in his March 30, 2017 Memorandum it met the "principal purpose" definition of debt collector that was neither at issue nor addressed in *Henson*.

The question in this case is whether Judge Nealon's holding in his

March 30, 2017 decision that Crown qualified as a "debt collector" under the first definition of "debt collector," i.e., "any business the principal purpose of which is the collection of any debts", §1692a(6), is contrary to the *Henson* decision despite the fact that *Henson* explicitly did not address this definition of debt collector. Crown contends that "[a]pplying the ruling in *Henson* to this case, Crown is not, and cannot be considered, a debt collector under the FDCPA" since it is a person to whom a debt is owed, fitting neatly into the FDCPA's definition of "creditor." (Id.). Crown states that since it fits the definition of creditor, it cannot also be a debt collector with respect to plaintiff's account. Thus, Crown contends that it acted on its own behalf, as a creditor, in its collection efforts after it bought plaintiff's account already in default. Crown encourages the court to broadly interpret the definition of a debt collector and it cites to four cases in which courts have done so after *Henson*. (Id. at pp. 4-5). Crown also submitted a notice of supplemental authorities on August 29, 2017, (Doc. 118), listing three additional cases, which were decided after *Henson* and after it filed its reply brief, and which support its position that it is a "creditor." The court does not find the cases cited by Crown in its brief and in its supplement to be persuasive, including the recent case of Chernyakhovskaya v. Resurgent Capital Services L.P., 2017 WL 3593115 (D.N.J. Aug. 18, 2017). In Chernyakhovskaya, the court dismissed plaintiff's FDCPA claim against defendant LVNV which had purchased plaintiff's

account while it was already in default and then referred the debt for collection to defendant Resurgent, without prejudice to file a second amended complaint to "cure any deficiencies as to the allegations against LVNV", seemingly to see if plaintiff could show that the principal purpose of LVNV's business was the collection of any debts.

Importantly, "[t]he FDCPA creates two 'mutually exclusive' categories, debt collectors and creditors, but only debt collectors are regulated by the statute." Bank of New York Mellon Trust Co. N.A., 862 F.3d at 34 (citation omitted). A "debt collector" is defined in the FDCPA as "'one who uses any instrumentality of interstate commerce or the mails in any business [1] the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" 15 U.S.C. §1692a(6)). The FDCPA defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. §1692a(4).

No doubt that the Third Circuit has held that "[a]s to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." Check Investors, 502 F.3d at 173. However, the court in its March 30, 2017 Memorandum, (Doc. 100, p. 18), stated:

> While a defendant in an FDCPA action cannot be both a "creditor" and a "debt collector," the United States Court of Appeals for the Seventh Circuit has noted that "for debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category."
> Schlosser v. Fairbanks Capital Com., 323 F.3d 534, 536 (7th Cir. 2003).

The court then stated that "at least nominally, Crown could be considered a 'creditor' under the FDCPA" since it acquired plaintiff's account, and since it was actually owed the debt which it acquired by assignment. (Id., pp.18-20). The court stated that based on the *Check Investors* case, when this situation occurs, you look to "the status of the debt when it was acquired to determine whether the defendant was acting as a 'creditor' or 'debt collector' under the FDCPA" and, that "[o]ne attempting to collect a debt is a 'debt collector' under the FDCPA if the debt in question was in default when acquired." Check Investors, 502 F.3d at 173. Now, based on *Henson*, "[t]hat the debt was already in default when the [entity] purchased it did not make the [entity] a debt collector." Bank of New York Mellon Trust Co. N.A., 862 F.3d at 34 (citing Henson 137 S.Ct. at 1723-24); Niborg v. CitiMortgage, Inc., 2017 WL 3017633, *2 (W.D. Wa. July 17, 2017) ("An entity that seeks to collect a debt for its own account is not a 'debt collector' under the FDCPA, even if it obtained the debt from the loan originator after it went into default." "Accordingly, a holder on a note and deed of trust does not constitute a 'debt

17

collector' under the FDCPA.") (citing Bank of New York Mellon Trust Co. N.A. v. Henderson, supra); Chernyakhovskaya, 2017 WL 3593115, *8 ("The holding in *Henson* overturned in part [*Check Investors*], which held that the FDCPA applied to entities who were in the practice of purchasing debts and then seeking to collect said debts.") (citing Henson, 137 S. Ct. at 1721)).

Plaintiff cites to the *Schweer* case to support her contention that *Henson* should be narrowly applied. In a nutshell, the facts in Schweer, 2017 WL 2906504, *1, are as follows:

> Defendant HOVG, LLC, a collection agency acting on behalf of Defendant Pendrick Capital Partners, LLC, mailed a letter to the Plaintiff, Lori Schweer. HOVG, identified in the letter as Bay Area Credit Service, advised Schweer that it was attempting to collect a debt owed to [Pendrick] after Pendrick purchased Schweer's debt owed to "Broad Mountain Emerg Phys PLLC."

> Additionally, Pendrick did "not undertake or participate in independent collection actions." Id.

In the Schweer case, 2017 WL 2906504, *5, the court stated that:

> In [*Henson*], the Supreme Court specifically addressed only whether or not the defendant could be found a debt collector when attempting to collect debts owed to itself as opposed to "another." Henson, 137 S.Ct. at 1721. In holding that they could not, the *Henson* Court appears to address circumstances similar to this one, where Pendrick, as owner of the debt, and regardless of the origins of the debt, cannot be considered a debt collector under the [FDCPA] for attempting to collect a debt that they own. But the *Henson* Court also made clear that its holding in that matter was narrow, and did not address the applicability of "in any business the principal purpose of which is the collection of any

18

debts[.]" Henson, 137 S.Ct. at 1721.

The *Schweer* Court, *id*., then stated that "[i]t is that unaddressed language that Schweer asks the Court to apply to Pendrick now. As stipulated in the joint case management plan, Pendrick's principal purpose of business 'is to buy defaulted debts and thereafter attempt to collect those debts.' The Defendants stipulated specifically that Pendrick is indeed a debt collector for the purposes of the Act." The *Schweer* Court then concluded that "*Henson* does not shield Pendrick from liability, as Pendrick fits in the remainder of the definition of a debt collector unaddressed by *Henson*" and that "[u]nder this definition of debt collector, the unresolved question on the status of the debt at the time of obtaining ownership is irrelevant." Id.

Crown states that plaintiff's reliance on the *Schweer* case is misplaced and that *Schweer* is distinguishable from this case since here there is no stipulation as to the application of the FDCPA and since it has continued to argue that it is a creditor, not a debt collector. Crown also states that "*Schweer* ignored this Court's creditor analysis in [the March 30, 2017 Memorandum, Doc. 100, pp. 24-25]", and its holding that "the Third Circuit has held that an entity is a debt collector if (1) it is assigned a defaulted debt, <u>and</u> (2) its principal business purpose is the collection of debts, or it regularly engages in debt collection." (citing Beard v. Ocwen Loan Serv., LLC, 2015

19

U.S. Dist. LEXIS 128401, at *8 n.1 (M.D. Pa. Sept. 24, 2015) (emphasis added) (citing Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000); Oppong v. First Union Mort. Corp., 215 F.App'x 114 (3d Cir. 2007)).

Thus, Crown concludes that:

Under *Henson*, a debt purchaser of defaulted debt does not trigger the statutory definition of a debt collector. So, post-*Henson*, the first part of the *Pollice* analysis must be answered in the negative. As such, it is not necessary to consider the second portion under the *Pollice* analysis, which is the principal business purpose query, and Crown cannot be a debt collector under the FDCPA.

(Doc. 113, p. 8).

Plaintiff states that "the 'principal purpose' definition covers all consumer debts, even if they are not owing to another and are instead owned by the debt collector defendant." (Doc. 110-2, p. 13). She states that the *Henson* decision was very narrow and did not address the definition of debt collector at issue in this case. She points out that as the *Schweer* Court recognized, the status of her debt at the time Crown bought it is not relevant and that this court can still find Crown was a debt collector under the principal purpose definition.

Crown argues that based on *Henson,* its summary judgment motion should now be granted because it cannot be considered a "debt collector" and the FDCPA does not apply. Therefore, Crown contends that it cannot be held

liable under the FDCPA. The Supreme Court in Henson, 137 S.Ct. at 1720, "face[d] a question about who exactly qualifies as a debt collector subject to the [FDCPA's] rigors." Chernyakhovskaya, 2017 WL 3593115, *8. In framing the issue in *Henson*, the Supreme Court stated "what if you purchase a debt and then try to collect it for yourself—does that make you a 'debt collector' too?" Henson, 137 S.Ct. at 1720.

The court in Chernyakhovskaya, 2017 WL 3593115, *8, summarized the facts in *Henson* as follows:

> CitiFinancial Auto loaned money to petitioners seeking to buy cars, petitioners then defaulted on those loans, Santander subsequently purchased the defaulted loans from CitiFinancial, and Santander sought to collect in a manner petitioners believed to be troublesome under the FDCPA. Id. at 1721-22. Both parties agreed that in deciding whether Santander's conduct falls within the meaning of the Act, it is necessary to look to the statutory language defining the term " 'debt collector' to embrace anyone who 'regularly collects or attempts to collect... debts owed or due...another'." Id. at 1721-22 (citing 15 U.S.C. §1692a(6)).

> "All that remain[ed] in dispute is how to classify individuals and entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account. Does the Act treat the debt purchaser in that scenario more like the repo man or the loan originator?" The Supreme Court held that a company may collect debts that it purchased for its own account without triggering the statutory definition of a debt collector as defined by the FDCPA. The FDCPA's definition of debt collector includes those who regularly seek to collect debts "owed ... another" and the statute's plain language focuses on third party collection agents regularly collecting for a debt owner, not a debt owner seeking to collect debts for itself. *See* —— U.S. ——, 137

S.Ct. 1718, 198 L.Ed.2d 177 (2017).

Based on *Henson*, Crown argues that it can no longer be considered a "debt collector" in this case since it was assigned plaintiff's defaulted debt and then referred the debt, which it now owned, for collection to Turning Point. *See* Chernyakhovskaya, 2017 WL 3593115, *9 ("Per *Henson*, an entity that purchases a debt for its own account does not constitute a debt collector under the FDCPA ...."). Crown also states that plaintiff must show, in part, that it is a "debt collector" as defined by the Act. *See* Douglass, 765 F.3d at 303. Thus, Crown maintains that it was a subsequent purchaser of plaintiff's defaulted Account, that it retained Turning Point to collect the debt for its own account, thus rendering it a creditor under *Henson*.

Contrary to Crown's position, the court does not read *Henson* as impacting FDCPA cases beyond those which include a dispute concerning the second of the definition of "debt collector" in §1692a(6). *See* Tepper v. Amos Financial, LLC, 2017 WL 3446886, *8 (E.D.Pa. Aug. 11, 2017), appeal pending, ("In *Henson*, the Court held that an entity that regularly purchases debts originated by a third party and then seeks to collect those debts for its own account is not a 'debt collector' under the second statutory definition."). The court in *Tepper* also stated that the first definition of "debt collector" provided in §1692a, i.e., the defendant will be a debt collector if its "principal purpose ... is the collection of any debts," was "explicitly noted" by the

22

Supreme Court to be "outside the scope of its review." Id. (citing Henson, 137 S.Ct. at 1721). Also, as discussed above, the court concurs with Deal, LLC, 2017 WL 3026401, *3 n. 2, which noted that "[i]n *Henson*, the Court held that individuals and entities who regularly purchase debts originated by someone else and then seek to collect on those debts do not qualify as debt collectors under the **second prong** of 15 U.S.C. §1692a(6) because they are not attempting to collect the debt of another.") (emphasis added). Therefore, this court declines to expand *Henson* and hold that Crown can no longer be considered a "debt collector" since it was assigned plaintiff's defaulted debt, and thus is a creditor even if it fits the principal purpose definition which was not addressed in *Henson*. *See* Tepper 2017 WL 3446886, *8 ("T]he [FDCPA] provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.'"). As such, while the court agrees with Crown that plaintiff's FDCPA claims fail insofar as she is relying on the second statutory definition of "debt collector", which was at issue in *Henson*, since it applies to "debts owed ... another," and the debt here was owed to Crown, it does not agree with Crown that it can no longer be considered a "debt collector" under the first statutory definition, not at issue in *Henson*, since it "applies to '*any* debts', provided only that the entity's *principal purpose* is the collection of such debt." Tepper, 2017 WL 3446886, *8 (emphasis original).

In the instant case, as Judge Nealon found in his March 30, 2017

Memorandum, (Doc. 100, p. 23), Crown is a purchaser of charged-off receivables, i.e., consumer accounts or commercial accounts, such as credit card accounts, where the consumer stopped paying on them,[4] and plaintiff's account was in default for over two years when it was acquired by Crown by agreement dated January 30, 2013. Approximately 90%-95% of the accounts bought by Crown are consumer accounts. After Crown buys consumer accounts, it validates the account, checks them for bankruptcy and deceased consumers, and then forwards them out to a collection agency to collect on the accounts. According to Foster, Crown does not ever collect on accounts directly. (Doc. 86, p. 6). As indicated, this court is adhering to the record and the undisputed facts which Judge Nealon found in his March 30, 2017 Memorandum for purposes of deciding Crown's motion for reconsideration.

In his March 30, 2017 Memorandum, (Doc. 100, pp. 25-26), Judge Nealon concluded as follows:

> In addition to arguing that Crown acquired the Account when it was in "default," Plaintiff also argues that Crown's "'principal purpose" is the collection of "any debts." (Doc. 79, pp. 14-15). The summary judgment record supports Plaintiff's position. Specifically, it is undisputed that Crown purchases "charged-off receivables," (Doc. 84, p. 2); (Doc. 94, p. 2), which, as noted

---

[4]*See also* deposition transcript of Jessica Foster, Vice President of operations for Crown and Crown's Rule 30(b)(6) corporate designee, (Doc. 86, p. 5).

above, are defaulted accounts where the consumer has stopped paying on the debt. *See* (Doc. 80-3, p. 3). According to Jessica Foster, ..., Crown is "a debt purchaser." (Doc. 83, p. 10); (Doc. 86, p. 5). While Crown claims that it "does not collect on charged-off receivables," it does not dispute that it "refers all charged-off receivables to third-party, independent servicers" for collection. (Doc. 84, p. 2); *see also* (Doc. 80, p. 2); (Doc. 91, p. 2); (Doc. 94, pp. 2-3). As a result, there is no dispute that Crown's principal purpose is to acquire accounts in "default" for the purpose of collection. *See* (Doc. 80, p. 2); (Doc. 84, p. 2); also (Docs. 94-1 - 94-3). Further, approximately ninety (90) to ninety-five (95) percent of Crown's receivables concern consumers. (Doc. 86, p. 12). Therefore, it is determined that Crown's "principal purpose" is the collection of "debts" and, thus, meets the definition of a"debt collector" under section 1692a(6) the FDCPA. *See* Pollice, 225 F.3d at 404, 405 n.28; *see also* Oppong, 215 F.App'x at 118-20; Martsolf v. JBC Legal Gm., P.C., 2008 U.S. Dist. LEXIS 6876, at *42-45 (M.D. Pa. Jan. 30, 2008) (Conner, J.).

As plaintiff explains, in Pollice, 225 F.3d at 404, "the Third Circuit observed that 'there is no question that the 'principal purpose' of [the defendant debt buyer's] business is the 'collection of any debts,' namely, defaulted obligations which it purchases from municipalities." Plaintiff then concludes that this "standard remains unaffected by *Henson*, and is the law of [the Third] Circuit." (Doc. 110-2, p. 17). Plaintiff also notes, (Id., n. 1), that:

> *Pollice* separately held that the debt collector was a debt buyer based on the fact that it purchased debts after they had gone into default. That particular language is no longer good law after *Henson*. But, the court's unrelated statement that purchasing obligations constitutes the collection of debt was not reliant on that discredited language.

As such, plaintiff maintains that Crown can still be a "debt collector"

under the first definition not addressed in *Henson*.

Simply put, this court declines to expand *Henson* and hold that Crown is not a "debt collector" even though it bought plaintiff's account after it was defaulted and Crown fits the principal purpose definition in §1692a(6). As mentioned, Judge Nealon in his March 30, 2017 Memorandum, (Doc. 100, pp. 25-26), held that "Crown's 'principal purpose' is the collection of 'debts'" and that it met the principal purpose definition of "debt collector."

The formula utilized by the court in its March 30, 2017 Memorandum to determine whether Crown was acting as a "creditor" or "debt collector" has been followed subsequent to *Henson*. In particular, in Martin v. Fein Such Kahn & Shepard, P.C., 2017 WL 2958501, *5 (D.N.J. July 11, 2017), the court stated that "[u]nder the FDCPA creditors are treated as debt collectors if they are third-party buyers of debt, and if the debt was in default at the time the third-party purchased it." (citing Pollice, 225 F.3d at 403).

This court does not find any of the requisite grounds necessary to grant Crown's motion for reconsideration. Based on the existing record and based on current Third Circuit precedent, this court will adhere to Judge Nealon's finding in his March 30, 2017 Memorandum that Crown meets the definition of a "debt collector" under §1692a(6) of the FDCPA. Thus, it will not address Crown's penultimate argument, namely, that since it is a "creditor", it cannot be vicariously liable for the actions of Turning Point.

## IV. CONCLUSION

Accordingly, the court will deny Crown's motion for reconsideration, Doc. 107. The court will give the parties 60 days to file renewed summary judgment motions pursuant to Judge Nealon's March 30, 2017 Memorandum, (Doc. 100, p. 45), regarding the issue of whether Turning Point was a "debt collector" under the FDCPA.

The court will continue to hold the Doc. 64 motion of plaintiff to certify class in abeyance until it decides the renewed dispositive motions.

## V. CERTIFICATION UNDER 28 U.S.C. §1292(b)

In order to certify a non-final order for interlocutory appeal, the court must find that: (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion as to the controlling question of law; and (3) an immediate appeal has the potential to materially advance the ultimate termination of the litigation. *See* Katz v. Carte Blanche Corp., 496 F.2d 747, 753-54 (3d Cir. 1974), cert. denied, 419 U.S. 885, 95 S.Ct. 152 (1974); Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co., 2011 WL 1044864, *2 (E.D.Pa. March 23, 2011). For the reasons set forth in the instant Memorandum as well as the Order that will issue simultaneously with this Memorandum, the court finds that each of the three elements is satisfied. As such, the court finds that certification pursuant to §1292(b) is appropriate

in this case.

An appropriate order will issue.

S/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 19, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-2748-01.wpd